UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| STEPHEN KEITH SHUNKWILER, SR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, ) <br> Commissioner of ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) | Case No. 1:20-CV-00145-JAR |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Stephen Keith Shunkwiler Sr.'s application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons discussed below, the decision of the Commissioner will be affirmed.

**I.     PROCEDURAL BACKGROUND**

On September 28, 2017, Plaintiff filed an application for DIB and SSI with an alleged disability onset date of August 30, 2017. (Doc. 20-1 at ¶ 1). Plaintiff claimed disability due to his back injury, joint swelling/pain, muscle swelling, muscle pain, numbness, headaches, sleeping extremities, shooting pain, and muscle weakness. (*Id.* at ¶ 12; Tr. at 85). Plaintiff's application was initially denied on November 28, 2017. (*Id.* at ¶ 2; Tr. at 85-90). Plaintiff then requested and was granted a hearing before an administrative law judge ("ALJ"), which took place by video on April 23, 2019. (*Id.* at ¶ 4; Tr. at 29-60). Plaintiff was represented by counsel at the hearing, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

1

After considering the testimony and record evidence, the ALJ issued an unfavorable decision on July 23, 2019. (*Id.* at ¶ 5; Tr. at 8-24). On May 20, 2020, the Appeals Council of the Social Security Administration ("SSA") denied Plaintiff's request for review. (*Id.* at ¶ 8; Tr. 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on July 1, 2020. (Doc. 1). The Commissioner filed an Answer on December 16, 2020. (Doc. 11). Thereafter, Plaintiff filed a Brief in Support of the Complaint (Doc. 20), the Commissioner filed a Brief in Support of the Answer (Doc. 23), and Plaintiff filed a reply. (Doc. 24). Also pending before this Court is Plaintiff's Motion to Supplement Record. (Doc. 13).

## II.     FACTS

This Court adopts Plaintiff's Statement of Uncontroverted Facts (Doc. 20-1) to the extent they are admitted by the Commissioner. (Doc. 23-1). The Court further adopts the Commissioner's Statement of Additional Material Facts (Doc. 23-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.    LEGAL STANDARD

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citation omitted). The Court defers heavily to the findings and conclusions of the SSA. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citation omitted). This Court may not reverse merely because substantial evidence exists in the record that

would support a contrary outcome or because the Court would have decided differently. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). In other words, this Court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

Under the SSA regulations, an individual is disabled if they have an inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The SSA has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the regulations ("Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history, and the process is complete. *Id.*

If the claimant does not have an impairment which meets or equals a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. §§ 404.945, 404.1520a(c)(3). RFC is an assessment of the claimant's

3

ability to perform sustained work-related physical and mental activities in light of his or her impairments. *See generally* S.S.R. 96–8p, 1996 WL 374184, at *2 (July 2, 1996). At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she is not disabled. If not, the ALJ proceeds to step five to determine whether the claimant is able to make an adjustment to other work in light of his or her RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform jobs existing in significant numbers within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004).

**IV.    DECISION OF THE ALJ**

After finding that Plaintiff had not engaged in substantial gainful activity since the alleged date of disability onset, the ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia, chronic pain syndrome, obesity, obstructive sleep apnea, migraines, major depressive disorder, generalized anxiety disorder, mood disorder, diabetes mellitus, mild thoracic spine generative disc disease, minimal left shoulder osteoarthritis, and mild lumbar spine degenerative disc disease. (Tr. at 13-14). The ALJ considered various other impairments, including Plaintiff's hypogonadism, vitamin D deficiency, temporomandibular joint syndrome ("TMJ"), and

allergic rhinitis, but found they were non-severe. (*Id.* at 14). The ALJ found that no impairment or combination of impairments met or medically equaled a Listing. (*Id.* at 14-17). Based on the medical record before her and Plaintiff's hearing testimony, the ALJ found that Plaintiff had the RFC to perform a range of light work with certain findings and limitations:

> Specifically, the claimant is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently. He is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. He is unable to climb ladders/ropes/scaffolds. He is able to engage in frequent overhead reaching with the left upper extremity. The claimant should avoid even occasional exposure to pulmonary irritants, such as fumes, odors, dusts, gases, chemicals, and poorly ventilated areas. He should avoid all exposure to unprotected heights and use of dangerous moving machinery. He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. (*Id.* at 17).

Plaintiff had past relevant work as a household retail appliance salesperson, warehouse worker, forklift operator, hose maker, machine hose cutter, and cashier, but the ALJ determined that Plaintiff could no longer perform any of these jobs given the RFC and based on the VE's answers to hypothetical questions. (*Id.* at 21-22). Accordingly, the ALJ proceeded to step five. Considering Plaintiff's age, education, work experience, and RFC, and relying on the VE's testimony, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 22-23). Specifically, and in accordance with the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Plaintiff would be able to perform the requirements of a cleaner, hand packer, or production worker. (*Id.*). Thus, the ALJ found Plaintiff was not disabled. (*Id.* at 23).

V.   **PLAINTIFF'S MEDICAL RECORDS AND PERSONAL HISTORY**

At the time of his hearing, Plaintiff was 47 years old and had not worked for some time. (Doc. 20-1 at ¶¶ 50, 55; *id.* at 40). He lives in an apartment with his wife and spends much of his time attending doctor appointments, reading, or just sitting on the couch. (Tr. at 43-44). Plaintiff

stated that he cannot drive (except for occasional, short trips), sometimes helps with the dishes while sitting on a stool, and assists with other basic household chores like folding laundry. (*Id.* at 46).

When asked about his physical limitations, Plaintiff testified that he can sit in the same position for roughly 10 minutes, stand for 30 minutes, and walk 20-30 feet before his back and legs get tired. (*Id.* at 43-44). Upon questioning by his attorney, Plaintiff also stated that he cannot be around light or sound due to his headaches, which come roughly three to five times per month. (*Id.* at 46-48). Finally, Plaintiff stated that he suffers from depression and is frequently tired due to his medications. (*Id.* at 49).

The medical records available to the ALJ begin in late 2016, before the alleged onset date of disability. Dr. Chul Kim performed a consultative examination through the Missouri Department of Elementary and Second Education Section of Disability Determinations in November 2017. (*Id.* at 335-344). Dr. Kim diagnosed multiple joints pain/swelling, probable osteoarthritis, obstructive sleep apnea, chronic fatigue, and tension headache. (*Id.* at 338-39). Throughout 2018 and 2019, APRN Stacy Grays performed mental status examinations. (*Id.* at 345-372). Plaintiff was frequently described as having normal speech and eye contact, goal-direct and linear thought process, no memory impairment, and normal attention. (Doc. 23-2 at ¶ 4). APRN Grays consistently discussed Plaintiff's history of major depressive disorder and sleep issues. Finally, Plaintiff has numerous records concerning his physical health from Missouri Highlands Health Care, including MRIs and x-rays. (Tr. at 411-452).

On November 28, 2018, state psychological consultant Barbara Markway, Ph.D., determined that Plaintiff had no mental medically determinable impairments. (*Id.* at 65; Doc. 23-2 at ¶ 10). The same day, state medical consultant Dr. David Marty found that Plaintiff had certain

6

exertional limitations but could stand or walk for 2 hours and sit for 6 hours during a normal 8-hour workday. Dr. Marty ultimately recommended a sedentary RFC. (*Id.* at 69).

## VI. DISCUSSION

Plaintiff makes four arguments in seeking judicial review. First, the ALJ improperly discounted the state medical consultant's assessment. Second, the ALJ failed to account for Plaintiff's use of a cane. Third, the ALJ did not adequately address Plaintiff's headaches and tiredness. Finally, the ALJ failed to consider all the evidence when assessing Plaintiff's RFC. This Court will address each argument while also generally considering whether the ALJ's decision is supported by substantial evidence.

### A. State Medical Consultant Assessment

Plaintiff contends that the ALJ failed to provide a sufficient explanation for declining to adopt the opinion of the state medical consultant, Dr. David Marty, who concluded that a "sedentary RFC is warranted" given Plaintiff's history of chronic pain and fibromyalgia. (*Id.*). The ALJ determined that Dr. Marty's findings focused primarily on Plaintiff's sleep apnea and fibromyalgia and accordingly were "not persuasive, as it is not supported by the record, which shows very little treatment for sleep apnea, and often demonstrates that the claimant is alert and fully oriented." (*Id.* at 21). The ALJ also noted that "although the [Plaintiff's] impairments presented some functional limitations, he is often found with a normal gait pattern, and had only mild findings during objective testing." (*Id.*).

Under the applicable regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the ALJ should consider various factors, with special emphasis placed on an opinion's supportability and consistency with the entire

medical record. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). *See Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *11 (E.D. Mo. Mar. 31, 2021) ("Under the new regulations, supportability and consistency are the most important factors to consider when determining the persuasiveness of a medical source's medical opinions, and therefore, an ALJ must explain how he considered the factors of supportability and consistency in his decision."). The RFC must ultimately be supported by "some medical evidence," but every finding of the RFC need not be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). "Even though the [RFC] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ reasonably determined that Dr. Marty relied primarily on Plaintiff's history of fibromyalgia and sleep apnea in deciding that a sedentary RFC is warranted and that, as a result, Dr. Marty's findings are not supported by the medical records. Dr. Marty's report explicitly states that Plaintiff's exertional limitations are "limited to the above due to fibromyalgia." (Tr. at 67). Dr. Marty later noted that "[i]maging in file shows no more than mild finding and [nerve conduction study] was normal. [Plaintiff] has had extensive testing for various impairments with no good explanation of symptoms." (*Id.* at 69). Plaintiff argues that Dr. Marty relied on the examining physician's report, which identified numerous other impairments. (Doc. 20 at 4). Dr. Marty may have considered this report, but his findings unquestionably depend primarily on Plaintiff's fibromyalgia and sleep apnea. The ALJ properly explained that such determinations are not fully consistent with or supported by Plaintiff's larger medical record. Accordingly, the ALJ satisfied her obligations under the social security regulations in declining to adopt the state medical consultant's RFC.

8

B. Plaintiff's Use of a Cane

Plaintiff argues that the ALJ erred by failing to account for his use of a cane. When establishing the RFC, the "most important issue" is assessing whether the claimant can "do the requisite physical tasks day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (citation omitted). The ALJ determined that Plaintiff can perform light work with various restrictions. Light work is defined as work that "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b); *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). Light work also involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. *Id.* To perform the full range of light work, a claimant must be able to stand or walk for six hours of an eight-hour workday. *Combs v. Berryhill*, 878 F.3d 642, 645 n.5 (8th Cir. 2017) (citation omitted).

The record reflects that Plaintiff used a cane and frequently appeared at appointments with a cane. There is no evidence, however, that Plaintiff was ever prescribed a cane by a physician during the relevant time period.[1] The ALJ clearly considered Plaintiff's use of a cane in reaching her decision, as evidenced by the following passage:

> Although the undersigned acknowledges that [Plaintiff] used a cane for appointments he attended, there is no evidence that any of his treating sources prescribed a cane. Furthermore, there were occasions wherein he was noted to have an irregular [gait], and to ambulate with a cane, such as during a May 2018 appointment and at another appointment in February 2019. Yet he had a normal gait during many other appointments, in addition to the ones mentioned above.

---

[1] Plaintiff has filed a Motion to Supplement Record to reflect that he received a prescription for use of a cane on September 5, 2019. (Doc. 13). Plaintiff contends that the evidence is "relevant to the time period in question." (Doc. 14 at 1). But this prescription was made *after* the ALJ's decision and therefore has no bearing on the question before this Court of whether the ALJ's decision is supported by substantial evidence. *See Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014) (internal quotations omitted) ("Material evidence is non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied."). Therefore, Plaintiff's motion to supplement the record will be denied.

9

>Therefore, the use of a cane was not warranted in the residual functional capacity herein. (Tr. at 19) (internal citations omitted).

The full range of light work may be precluded when a constant use of a cane is medically necessary. *See Pliler v. Berryhill*, No. 17-03010-CV-S-ODS, 2017 WL 4167456, at *2 (W.D. Mo. Sept. 20, 2017). But the Eighth Circuit has repeatedly affirmed ALJs' determinations that a claimant could perform light work where the use of a cane was self-prescribed. *See Hill v. Astrue*, No. 4:11-CV-0874 SNLJ TCM, 2012 WL 3705138, at *11 (E.D. Mo. Aug. 2, 2012) (collecting cases). Social security regulations provide, moreover, that to "find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." S.S.R. 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

After reviewing Plaintiff's extensive medical records and considering that the use of a cane was not medically prescribed, the ALJ concluded that use of a cane was not a required element of the RFC. The Eighth Circuit has recently endorsed precisely this sort of determination. *See Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) ("[A]lthough it is not the role of the ALJ to make determinations as to the medical necessity of . . . assistive devices, the ALJ correctly noted that the cane was not prescribed by a medical care provider."). The ALJ properly cited medical evidence indicating that a cane was not fully necessary and noted the lack of prescription. (Tr. at 19). It is Plaintiff's burden, moreover, to establish the medical need for an assistive device. *Williams v. Saul*, No. 4:19-CV-2332-NCC, 2020 WL 5814479, at *10 (E.D. Mo. Sept. 30, 2020). Therefore, this Court finds that the ALJ did not commit reversible error by declining to incorporate Plaintiff's use of a cane in the RFC. For the same reasons, the ALJ did not commit error by neglecting to mention use of a cane in the hypotheticals posed to the VE. *See Nash v. Comm'r,*

*Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (impairments not supported by medical record need not be presented to VE).

### C. Plaintiff's Headaches and Tiredness

Plaintiff argues that he suffers from tension headaches and takes various medications which could cause tiredness, rendering him unemployable. Plaintiff's medical records include multiple references to headaches, including a report that Plaintiff claimed he suffers headaches 4-5 times per week and must seek a dark, quiet place when they come. (Tr. at 403; Doc. 20-1 at ¶ 39; Doc. 23-1 at ¶ 39). While there is no specific discussion in the records of medications causing tiredness, it does appear that sleepiness or drowsiness is a known side effect of certain medications taken by Plaintiff. (Doc. 20 at 12-13). At the hearing, the VE testified that Plaintiff would be unemployable if he were absent from work for two to three hours at unscheduled times up to three times per month. (Tr. at 56). The VE further testified that Plaintiff would be unemployable if he had to lie down for two to three hours each workday. (*Id.* at 57).

The ALJ clearly considered Plaintiff's headaches, noting when discussing the RFC that Plaintiff "testified that he has headaches that [are] triggered by light and sound, and that he recently went to the hospital because of headaches." (*Id.* at 17). Yet Dr. Marty's report indicates that Plaintiff may have unlimited exposure to noise. (*Id.* at 68). While the ALJ did not specifically use the term "tiredness," she did frequently discuss medical records indicating that Plaintiff was "alert and oriented" and "reported he was having good sleep." (*Id.* at 20). The ALJ also considered Plaintiff's daily activities as evidence that he can perform simple, routine, repetitive tasks in certain work environments. (*Id.*). Whether caused by sleep apnea or medication side effects, the ALJ evidently addressed tiredness when assessing Plaintiff's RFC.

11

An ALJ has a duty to consider the side effects of medications when assessing a claimant's credibility. *See Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010). Plaintiff relies heavily on *Porch v. Chater*, where the Eighth Circuit reversed and remanded because the ALJ ignored the claimant's subjective description of the side effects of his medications. 115 F.3d 567, 572 (8th Cir. 1997). During the hearing in this case, Plaintiff once mentioned that his allergy medicines make him tired, but his tiredness was more generally discussed in the context of his sleep apnea. (Tr. at 49). Unlike in *Porch*, the ALJ here specifically addressed the issue of tiredness; it makes no difference whether the ALJ attributed Plaintiff's tiredness to his medications or sleep apnea. The ALJ also discussed that Plaintiff's sleep apnea was improving with medication, a determination supported by the medical records. (*Id.* at 20; Doc. 23-2 at ¶¶ 5, 7). *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability."). Therefore, the Court finds that the ALJ properly considered Plaintiff's subjective statements and the medical record when assessing the impact of Plaintiff's headaches and medications. *See Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (holding ALJ did not err by omitting medication drowsiness from RFC where no evidence suggested side effects were uncontrollable or restricted claimant's ability to work).

D. <u>Evidence Considered in Reaching RFC</u>

Finally, Plaintiff argues that the ALJ failed to consider all of the evidence in establishing the RFC. Put another way, Plaintiff contends that the RFC is not supported by substantial evidence. Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citation omitted). This Court will "disturb the ALJ's decision only if it falls outside the

available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). This Court will proceed to address the specific arguments brought by Plaintiff under this general contention.

*Standing Requirement for Light Work*

First, Plaintiff claims that the ALJ failed to consider the 6-hour standing requirement for light work. At the hearing, Plaintiff's counsel specifically suggested that his "theory of the case" was that Plaintiff "would not be able to sit/stand for the requisite period of time" to perform light work. (Tr. at 38). Plaintiff testified that he could only stand for up to 30 minutes. (*Id.* at 44). Defendant responds that the ALJ "specifically addressed Plaintiff's various musculoskeletal impairments and found only mild objective findings and a generally normal gait pattern." (Doc. 23 at 10). The full range of light work requires standing or walking, off and on, for approximately 6 hours in an 8-hour workday. S.S.R. 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983); *see also Cain v. Berryhill*, No. 2:17-CV-00051-NCC, 2018 WL 4358258, at *4 (E.D. Mo. Sept. 13, 2018). *But see Coleman v. Berryhill*, No. 4:16-CV-1546 SNLJ, 2017 WL 6407476, at *5 (E.D. Mo. Dec. 15, 2017) ("Light work can involve sitting most of the time with some pushing and pulling of arm or leg controls.").

The ALJ found that Plaintiff "is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks." (Tr. at 17). In reaching this conclusion, the ALJ noted that the "musculoskeletal pain and symptoms [Plaintiff] suffers from . . . reasonably reduce him to work at the light exertional level, as these musculoskeletal impairments have a direct impact on [Plaintiff's] ability to lift and carry, stand, walk." (*Id.* at 18). But the ALJ proceeded to find that Plaintiff's mostly mild objective medical findings as to his musculoskeletal impairments indicating he could perform light exertional work. (*Id.* at 18-19). The ALJ's determination that Plaintiff could stand or walk for 6 hours is supported by Plaintiffs mild objective findings in the

13

medical record. (Doc. 23-2 at ¶¶ 14-15; *id.* at 390, 404). The ALJ also accounted for Plaintiff's impairments by limiting Plaintiff to less than a full range of light work.

*Balancing*

Plaintiff argues that the ALJ erred by failing to address his balancing limitations. This Court is aware of no objective evidence in the record, however, indicating that Plaintiff suffered documented balancing issues (beyond Plaintiff's own statements). Dr. Marty's assessment indicated that Plaintiff had no balancing limitations. (*Id.* at 67). Plaintiff has not offered any specific evidence in the medical records suggesting Plaintiff had severe balancing restrictions. Accordingly, the ALJ did not err by failing to address balancing in the RFC.

*Shoulder Issues*

The ALJ stated that Plaintiff had "full range of motion to his shoulder during the consultative examination." (*Id.* at 19). Plaintiff correctly notes that this statement is technically inaccurate, as the exam revealed full range of motion in four of five areas, and 50% range of motion in the fifth area. (*Id.* at 340). The ALJ proceeded to accurately note that Plaintiff had no rotator cuff tear or acute osseous abnormality. (*Id.* at 19). This Court agrees with Defendant that the ALJ's misstatement was harmless error, as recognition of the 50% limitation in the fifth area would not change the outcome in this case. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (citation omitted) ("To show an error was not harmless, [claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred.").

*Other Considerations*

Though not specifically addressed by Plaintiff, the Court notes that the ALJ considered numerous other impairments and medical issues in reaching the RFC. The ALJ properly discussed

14

Plaintiff's subjective symptoms in relation to his daily activities, which included certain basic household chores. (Tr. at 20). *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (discussing inconsistencies between activity levels and subjective symptoms). The ALJ extensively addressed Plaintiff's mental health impairments, noting that Plaintiff had reported improvement with treatment and frequently appeared at appointments with a normal mental health status. (*Id.* at 18-19; *see also* Doc. 23-2 at ¶¶ 4, 7-9). The ALJ briefly addressed the effects of Plaintiff's diabetes and sleep apnea. (*Id.* at 19).

Overall, this Court finds that the ALJ performed an extensive review of Plaintiff's medical records and subjective statements before rendering an opinion supported by substantial evidence. There may be areas where the ALJ could have provided further detail regarding her determinations, but this Court cannot say that the ALJ's decision falls outside the available zone of choice. *Papesh*, 786 F.3d at 1131.

### E. Harmless Error

Throughout his briefing, Plaintiff argues that the ALJ erred in reaching an RFC permitting light work. Plaintiff argues, for example, that the ALJ improperly discounted the opinion of Dr. Marty, who found that Plaintiff could only perform sedentary work. Plaintiff also claims that he can only stand or walk for two hours per workday, which is consistent with sedentary work. *See Coleman*, 2017 WL 6407476, at *5 ("[Claimant's] 2-hour standing or walking restriction is consistent with sedentary work."). Even if the ALJ erred by finding Plaintiff capable of performing light work, this Court finds that such error was harmless because Plaintiff remained capable of performing sedentary work. *See Adair v. Berryhill*, No. 2:15-CV-77 JMB, 2017 WL 365432, at *10 (E.D. Mo. Jan. 25, 2017) ("Finally, although the RFC is supported by substantial evidence as it is, any failure to assign a slightly more restrictive RFC would have been harmless error because

all of the jobs that the ALJ found Plaintiff capable of doing at step five are either sedentary or light in nature.").

At the hearing, the ALJ posed "Hypothetical Number Three" to the VE, which identified someone with Plaintiff's other RFC limitations but limited to sedentary work, instead of light. The ALJ noted that the hypothetical individual would only be able to stand or walk for two hours in a workday. In response to this hypothetical, the ALJ identified three jobs existing in significant numbers in the national economy that the hypothetical individual could perform (hand packer; production worker; and inspector/tester/sorter). (Tr. at 54-55). The SSA denied Plaintiff's initial claim in part based on Dr. Marty's determination that Plaintiff could perform sedentary work. (Tr. at 71). To show an error was not harmless, Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917. Based on the VE's testimony, it is apparent that even if the ALJ had determined Plaintiff could only perform sedentary work, the result would have been the same.

### VII.   CONCLUSION

After careful consideration, this Court will affirm the decision of the ALJ. First, the ALJ reasonably discounted the opinion of the state medical consultant based on such opinion's lack of supportability and inconsistency with the objective findings. Second, the ALJ did not err in failing to include Plaintiff's self-prescribed use of a cane in the RFC. Third, the ALJ properly considered Plaintiff's headaches and tiredness in making her decision. Fourth, the ALJ's decision is supported by substantial evidence as it reflects a careful review of the entire medical record and falls within the available zone of choice. Finally, even if the ALJ erred by finding Plaintiff capable of light work, such error was harmless given the VE's clear testimony that there are a significant number

of jobs in the national economy which Plaintiff can perform at the sedentary level and given the other restrictions in the RFC.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**. A separate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement Record (Doc. 13) is **DENIED**.

Dated this 16th day of April, 2021.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE